

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
12/21/2012

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 10-41521** |
| **DIABETES AMERICA, INC.** | § | **CHAPTER  11** |
| | § | |
| Debtor(s). | § | **JUDGE ISGUR** |
| | § | |
| | § | |
| **H. MALCOLM LOVETT, JR.** | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| **vs.** | § | **ADVERSARY NO. 12-3284** |
| | § | |
| **CARDINAL HEALTH, INC.; dba** | § | |
| **CARDINAL HEALTH** | § | |
| **PHARMACEUTICAL DISTRIBUTION** | § | |
| | § | |
| Defendant(s). | § | |

## MEMORANDUM OPINION

Cardinal Health's Motion to Dismiss based on its allegation that the Plan Agent does not have postconfirmation standing is denied.  The Plan Agent has postconfirmation standing because the confirmed plan and disclosure statement specifically and unequivocally: (i) retain this cause of action; and, (ii) authorize the Plan Agent to prosecute the cause of action. Moreover, the Plan Agent is not estopped.

### Safe Harbor

To assist future litigants in this difficult area, the Court believes that it would be helpful to establish a safe harbor[1] to ensure postconfirmation standing and to avoid estoppel.  The Court holds that satisfaction of the following standards would constitute a safe harbor:

---

[1]  Failure to meet any safe harbor requirement does not necessarily render the retention language insufficient or indicate that the plaintiff is estopped from bringing the cause of action.  It only means the plaintiff may not benefit from the safe harbor, which is designed to avoid the necessity of further inquiry.

- The plan explicitly retains the right to bring causes of action previously belonging to the debtor or to the estate. The plan or disclosure statement must identify the specific types of causes of action that are retained. Blanket identification is not sufficient.

- The plan authorizes prosecution by the plaintiff bringing the lawsuit.

- Neither specific nor categorical identification of potential defendants is required.

- The disclosure statement contains cautionary language that creditors should not accept the plan with the expectation that the creditor will not be sued.

- Neither the plan nor the disclosure statement contain other statements that contradict the above.

## Background

The Debtor filed its chapter 11 case on December 21, 2010. (Case No. 10-41521, ECF No.1).

The Debtor scheduled Cardinal as holding an unsecured, nonpriority claim in the amount of $76,205.34. (Case No. 10-41521, ECF No. 96-5 at 5).

The Debtor filed its second amended disclosure statement and second amended liquidation plan on September 1, 2011. (Case No. 10-41521, ECF Nos. 298, 299). On September 2, 2011, the Court approved the second amended disclosure statement. (Case No. 10-41521, ECF No. 302). On December 5, 2011, the second amended liquidation plan was confirmed. (Case No. 10-41521, ECF No. 368).

The confirmed plan and disclosure statement contain language granting the Plan Agent the authority to file claim objections and to bring certain postconfirmation causes of action on behalf of the Liquidating Debtor. (Case No. 10-41521, ECF No. 299 at 22). Whether this language is sufficient for postconfirmation standing is the main issue in this Memorandum Opinion.

H. Malcolm Lovett, Jr. (the "Plan Agent") filed this adversary proceeding on June 27, 2012. (ECF No. 1). The Plan Agent filed a second amended complaint on August 20, 2011. (ECF No. 9).

The Plan Agent alleges that Cardinal Health 411, Inc., d/b/a Cardinal Health Pharmaceutical Distribution (hereinafter "Cardinal Health") is the transferee of constructively fraudulent transfers under § 548 of the Bankruptcy Code and § 24.005 of the Texas Business and Commerce Code (made applicable in bankruptcy cases via § 544(b)). (ECF No. 9 at 7-8). The Plan Agent also argues that the Court should disallow Cardinal Health's claim under § 502(d) and seeks the recovery of attorneys' fees. (ECF No. 9 at 8).

The Plan Agent alleges the Debtor made payments, or incurred obligations, to Cardinal Health in exchange for pharmaceutical-related goods and services sent to a nondebtor affiliate, not to the Debtor. (ECF No. 9 at 6-7).

Cardinal Health moved to dismiss the second amended complaint, arguing that the Plan Agent lacks postconfirmation standing. (ECF No. 13 at 4).

## Analysis

### I.    Postconfirmation Standing

For a postconfirmation debtor (or its representative)[2] to have standing to pursue a preconfirmation cause of action, the claim must have been properly retained in the confirmed plan or disclosure statement.

During a chapter 11 case, the debtor acts as a debtor-in-possession and has essentially the same powers as a bankruptcy trustee, including the right to pursue prepetition claims (and

---

[2] The Fifth Circuit allows parties other than the debtor or a trustee to be granted these rights. *See McFarland v. Leyh (In re Tex. Gen. Petroleum Corp.)*, 52 F.3d 1330, 1335 (5th Cir. 1995) ("We agree with the Ninth and Tenth Circuits that a party other than the debtor or the trustee may be authorized by a plan of reorganization to exercise avoidance powers.").

postpetition but preconfirmation claims) on behalf of the bankruptcy estate.   11 U.S.C. § 1107(a).   After confirmation, the debtor is no longer the debtor-in-possession and does not have the authority to pursue claims previously owned by the estate—unless those claims were properly retained pursuant to § 1123(b)(3)(B).   *See In re United Operating, LLC*, 540 F.3d 351, 355 (5th Cir. 2008) ("If a debtor has not made an effective reservation, the debtor has no standing to pursue a claim that the estate owned before it was dissolved.").

The applicable statutory language reads: "[A plan may] provide for . . . the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any [claim or interest belonging to the debtor or to the estate] . . . ." 11 U.S.C. § 1123(b)(3).

Three cases[3] form the postconfirmation standing rubric in the Fifth Circuit: (i) *Dynasty Oil and Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351 (5th Cir. 2008); (ii) *Spicer v. Laguna Madre Oil & Gas II, L.L.C. (In re Texas Wyoming Drilling, Inc.)*, 647 F.3d 547 (5th Cir. 2011); and, (iii) *Compton v. Anderson (In re MPF Holdings US, LLC)*, --- F.3d ---, 2012 WL 5503952 (5th Cir. Nov. 14, 2012).

### A.   *United Operating*

In *In re United Operating, LLC*, the Official Unsecured Creditors' Committee attempted to bring preconfirmation common-law claims against certain defendants.   540 F.3d at 354.   The lawsuit was filed postconfirmation.   The plan's retention language, however, only referenced causes of action arising under the Bankruptcy Code.   The plan had a blanket or generic reservation (any and all claims arising under the Code) and a more specific reservation (causes of action under various identified Code provisions).   *United Operating*, 540 F.3d at 356.   The Fifth

---

[3] *Texas General Petroleum Corp.* allows for the delegation of powers and provides important background on the standing issue.   *McFarland v. Leyh (In re Tex. Gen. Petroleum Corp.)*, 52 F.3d 1330 (5th Cir. 1995).

Circuit held that this was insufficient to preserve common-law causes of action. *United Operating*, 540 F.3d at 355.

The rule adopted by the Fifth Circuit was that for claims to be properly preserved, a plan "must expressly retain the right to pursue such actions" and such reservation must be "specific and unequivocal." *United Operating*, 540 F.3d at 355.

The retention language used in *United Operating* failed to reference common-law causes of action. The Fifth Circuit did not explicitly hold that generic retention language (e.g., "any and all common-law causes of action" or "any and all causes of action arising under the Code") is insufficient (assuming the generic language first properly identifies the retained claims as either common law or statutory).

Nevertheless, the Fifth Circuit strongly indicated that generic language by itself would be insufficient. Immediately after holding that the reservation must be "specific and unequivocal," the Fifth Circuit contrasted a blanket reservation ("any and all claims arising under the Code") with a specific reservation (other types of claims under various identified Bankruptcy Code provisions). *United Operating*, 540 F.3d at 356. The strong indication is that the former would be insufficient.

The issue of identification of prospective defendants was not directly addressed in *United Operating*. Litigants, such as Cardinal Health in this case, have interpreted *United Operating* as requiring identification of prospective defendants. It is an argument that the Fifth Circuit seriously addressed in later cases.

B.      *Texas Wyoming Drilling*

The Fifth Circuit expounded on the requirements of postconfirmation standing in *Texas Wyoming Drilling*.

The Fifth Circuit first held that disclosure statements, in addition to confirmed plans, may be consulted to determine if there is sufficient retention language.  *Tex. Wyo. Drilling*, 647 F.3d at 551.

Next, the Fifth Circuit highlighted the following sufficient retention language included in Texas Wyoming Drilling's plan and disclosure statement:

> Under the section entitled "Retention of Causes of Action," the plan provides that "[t]he Reorganized Debtor shall retain all rights, claims, defenses, and causes of action including, but not limited to, the Estate Actions, and shall have sole authority to prosecute and/or settle such actions." "Estate Actions" is defined to include claims under Chapter 5 of the Bankruptcy Code.  The disclosure statement also states that "[t]he Debtor reserves all rights to pursue, at its sole discretion, any Estate Actions not limited to but including any preference to the full extent allowed under the Bankruptcy Code and applicable state laws.  The Debtor may also pursue other actions including but not limited to actions under sections 542 and 549 of the Bankruptcy Code."  The disclosure statement again defines "Estate Actions" to include "various potential avoidable transfers that can be recovered under Chapter 5."  Included within the disclosure statement was a chart outlining "various claims and causes of action the Debtor or the Reorganized Debtor may pursue on behalf of the Debtor's estate."  As one of the potential defendants, the chart listed "Various pre-petition shareholders of the Debtor" who might be sued for "fraudulent transfer and recovery of dividends paid to shareholders," valuing the claims at approximately $4 million.

647 F.3d at 549 (internal citations omitted).  The Fifth Circuit contrasted this sufficient retention language with that used in *United Operating* (which it had found to be insufficient):

> Unlike the plan in *In re United Operating*, which contained only a blanket reservation of "any and all claims," TWD's plan and disclosure statement revealed the existence of the Avoidance Actions, the possible amount of recovery to which they would lead, the basis for the actions (namely, pre-petition dividends and transfers to equity interest holders), and that the reorganized debtor intended to pursue the claims.

*Tex. Wyo. Drilling*, 647 F.3d at 551.

The Fifth Circuit did not decide whether identification of prospective defendants is required, but did reject defendants' argument that a categorical identification did not constitute identification. 647 F.3d at 552 (holding that "various prepetition shareholders of the Debtor" constituted identification).

In addition to holding that disclosure statements may also be consulted for the requisite retention language, *Texas Wyoming Drilling* added the following clarifications to the *United Operating* analysis:

- If identification is required at all, categorical identification (e.g., "various prepetition shareholders of the Debtor") will suffice. Individual identification (e.g., Shareholder A and Shareholder P) is not required.

- It is not necessary for the retention language to include statements such as "lawsuits will be brought."

### C.    *MPF Holdings*

*MPF Holdings* is the latest Fifth Circuit postconfirmation standing case. *In re MPF Holdings US LLC*, --- F.3d ---, 2012 WL 5503952 (5th Cir. Nov. 14, 2012). In overturning a bankruptcy court's ruling that retention language was not sufficiently specific and unequivocal, the Fifth Circuit further clarified the requirements for postconfirmation standing.

### 1.    Individual Identification Not Required

The bankruptcy court had concluded that "the parties to be sued after confirmation must be individually identified in the plan." *In re MPF Holdings US LLC*, 443 B.R. 736, 744 (Bankr.

S.D. Tex. 2011).  The bankruptcy court decision was issued prior to *Texas Wyoming Drilling*. The Fifth Circuit reiterated in *MPF Holdings* that *Texas Wyoming Drilling* rejected this conclusion.  2012 WL 5503952 at *5.

### 2.     Language Such as "Will be Sued" Not Necessary

The bankruptcy court further concluded that the retention language "must also state that following confirmation, these defendants **will be sued**—not that they **may be sued** or **could be sued** or **might be sued**."  *MPF Holdings*, 443 B.R. at 745 (emphasis in original).

The Fifth Circuit noted that *Texas Wyoming Drilling* indicated the opposite.  2012 WL 5503952 at *5 ("Additionally, *Texas Wyoming Drilling* held that a reorganization plan that merely identified the parties who 'might be sued' and gave the debtor 'sole discretion' on whether to bring any of the reserved claims was sufficient under *United Operating*.");  *see also Tex. Wyo. Drilling*, 647 F.3d at 549 ("The Debtor *may* also pursue other actions . . . .") ("[R]eorganized Debtor *may* pursue . . . .) (emphasis added).

### 3.     Ambiguity Does not Render a Reservation Invalid Per Se

The bankruptcy court also held that if any ambiguity exists in the reservation language, then it is invalid per se because the presence of ambiguity, by definition, renders the language not specific and unequivocal.  442 B.R. at 751.

The Fifth Circuit rejected this holding as well, noting that the holding of *Texas General Petroleum Corp.* (a case cited with approval in *United Operating*), "is in clear tension with a general rule that any ambiguity in the reservation language of a reorganization plan renders the language invalid."  2012 WL 5503952 at *6.  In *Texas General Petroleum Corp.*, the retention language was clearly ambiguous, yet the bankruptcy court used parol evidence to resolve the ambiguity and identify those claims the plan meant to retain.  2012 WL 5503952 at *6.

The Fifth Circuit also determined that contract interpretation principles should be applied to resolve ambiguity in the plain language of the reorganization plan or disclosure statement. 2012 WL 5503952 at *6 ("It follows that a finding that one party's interpretation of the Plan is reasonable cannot alone support a finding that the Plan is ambiguous.  If a court applies contract interpretation principles and finds that the only reasonable interpretation of the Plan is that certain parties were released, that would not render the reservation insufficiently specific and unequivocal.").

### 4.    Certain Questions Left Unanswered

Questions remain.  Especially important for this case is whether categorical identification of prospective defendants is required.

Another unanswered question is how specifically the retention language must describe the basis of recovery.  That is, if the postconfirmation cause of action is a § 548 constructive fraudulent transfer action, which of the following, if any, constitutes the minimum required for proper claim preservation:  (i) any and all causes of action under the Bankruptcy Code;[4] (ii) avoidance actions; (iii) avoidance actions under Chapter 5 of the Bankruptcy Code; or, (iv) § 548 fraudulent transfer actions?

## II.    Identification Revisited

The statutory language of § 1123(b)(3) does not mention identification, nor does it explicitly require that the retention language be "specific and unequivocal."  If identification is required, it must come from the case law.

---

[4] As noted above, *United Operating* strongly indicates that this language is insufficient.

###### A.        *United Operating*

The issue of identification of prospective defendants relates back to *United Operating*, even though that case did not directly address the issue.  It was not necessary for the Fifth Circuit to do so because the retention language was otherwise inadequate.  (The retention language referenced only statutory causes of action, yet postconfirmation plaintiffs attempted to bring common-law causes of action.)

Portions of *United Operating*, however, have been interpreted as requiring identification of prospective defendants.  *See, e.g.*, *Tex. Wyo. Drilling*, 647 F.3d at 551 (court rejected postconfirmation defendants' argument that *United Operating* should be read as requiring individual identification).  In its Motion to Dismiss, Cardinal Health similarly argues that *United Operating* requires identification of prospective defendants for proper claim preservation.  (ECF No. 13 at 10).

The first indication in *United Operating* that identification of prospective defendants may be required appears to be the following excerpt:

> To facilitate this timely, comprehensive resolution of an estate, a debtor must put its creditors on notice of any claim it wishes to pursue after confirmation. *Harstad*, 39 F.3d at 903 ("We view § 1123(b)(3) as, at least in part, a notice provision.").  Proper notice allows creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it—"absent 'specific and unequivocal' retention language in the plan, creditors lack sufficient information regarding their benefits and potential liabilities to cast an intelligent vote." *Paramount*, 172 B.R. at 334.

*United Operating*, 540 F.3d at 355.  Of particular note is the description of § 1123(b)(3) as having a "notice" aspect, which necessitates notifying creditors of their potential liabilities.  The cases cited and quoted in this excerpt require further examination.

### B.    *Harstad II* (Eighth Circuit Opinion)[5]

The Fifth Circuit's first quotation cited above in *United Operating* is from the Eight Circuit case *Harstad v. First Am. Bank*, 39 F.3d 898 (8th Cir. 1994).  Although for a different reason than *United Operating*, the retention language was also woefully inadequate.  The plan lacked anything resembling retention language, even generic retention language.  The Harstads tried unsuccessfully to argue that Article X of their plan contained the necessary language. Article X read as follows:

> The Court will retain jurisdiction until this Plan has been fully consummated for the following purposes: classification of the claims for damages form [sic] rejection of executory contracts or unexpired leases; determination of all questions and disputes regarding title to the assets of the estate and the determination of all causes of actions between Debtors and any other party, including but not limited to, any right of Debtors to recover assets pursuant to the provision of the Bankruptcy Code; correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purpose and intent of this Plan; interpretation and enforcement of the terms of this Plan; shortening or extending, for cause, of time fixed for doing any act or thing under this Plan; entry of any order, including any injunction, necessary to enforce the title, rights and powers of Debtors; and entry of an order concluding the terminating [sic] this case.  The Court may exercise its jurisdiction after notice and hearing or ex parte, as the Court determines to be appropriate.

*In re Harstad*, 155 B.R. 500, 503 (Bankr. D. Minn. 1993).[6]  The subject of Article X is clearly retention of jurisdiction by the bankruptcy court postconfirmation, not retention by the Harstads of the right to bring certain preconfirmation causes of action postconfirmation.  On appeal, the Eight Circuit described as similarly ineffectual the following language from the Harstads' amended disclosure statement:

---

[5] The Eight Circuit *Harstad* opinion will be referred to as *Harstad II*, while the Bankruptcy Court *Harstad* opinion will be referred to as *Harstad I*.

[6] As noted by this citation, the plan language is from the bankruptcy court opinion.  The Eight Circuit did not quote Article X in full, although it did nevertheless consider the language.  *Harstad II*, 39 F.3d at 902.

> Debtors and the Committee of Unsecured Creditors have not yet
> completed the analysis of pre-petition preferential transfers subject to
> avoidance under 11 U.S.C. § 547. Debtors do not know at the present
> time whether or not there are any preferential transfers.

*Harstad II*, 39 F.3d at 901. The Eight Circuit held that Article X did not contain the necessary

retention language. *Harstad II*, 39 F.3d at 902.

Failure to identify prospective defendants did not render the retention language

insufficient in *Harstad II*. The plan entirely failed to mention that the debtors retained the right

to bring any causes of action, let alone the § 547 preference actions the Harstads sought to bring:

> The Harstads' argument must fail. Article X, captioned "Continuing
> Jurisdiction," concerns the ongoing jurisdiction of the Bankruptcy Court
> for matters that arise after plan confirmation. Noting the retention of the
> court's statutory jurisdiction to hear postconfirmation matters is a far cry
> from reserving to the debtors a right to bring postconfirmation claims to
> recover preferences paid by the debtors but never disclosed by them
> during the pre-confirmation proceedings. We hold that the above-quoted
> language is not a retention of the claim at issue here—much less the
> "specific and unequivocal" retention language that some courts require.

*Harstad II*, 39 F.3d at 902.

*Harstad II* does not support the notion that successful retention requires identification of

prospective defendants. The notice aspect of § 1123(b)(3) discussed is notice to all creditors that

there are assets yet to be liquidated that will be pursued postconfirmation, which is information

necessary for the creditors to be able to properly calculate their payout under the proposed plan.

The full excerpt from *Harstad II*, only a sentence of which was used in *United Operating*, reads

as follows:

> We view § 1123(b)(3) as, at least in part, a notice provision. ***Creditors
> have the right to know of any potential causes of action that might
> enlarge the estate—and that could be used to increase payment to the
> creditors.*** Even if, as the Harstads claim, they gave notice of such claims
> by indicating in their disclosure statement that the availability of such
> claims was being investigated, the creditors are entitled to know if the
> debtors intend to pursue the preferences in post-confirmation actions.

Compliance with § 1123(b)(3) gives notice of that intent. ***Only then are creditors in a position to seek a share of any such recoveries, contingent though they may be, and to have the mechanics of the preference-sharing spelled out in the plan.*** Creditors are in no position to do so if they are not on notice that the debtor retains the power to pursue recovery.

*Harstad II*, 39 F.3d at 903 (emphasis added). The fact that *United Operating* cited to (and quoted from) *Harstad II* does not indicate support for an identification requirement.[7]

## C.   *Paramount Plastics*

The Fifth Circuit's citation to *Paramount Plastics* appears at first glance to support the idea that proper claim reservation requires identification of prospective defendants. Again, that citation is found in the following excerpt:

> To facilitate this timely, comprehensive resolution of an estate, a debtor must put its creditors on notice of any claim it wishes to pursue after confirmation. *Harstad* [*II*], 39 F.3d at 903 ("We view § 1123(b)(3) as, at least in part, a notice provision."). Proper notice allows creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it—"absent 'specific and unequivocal' retention language in the plan, creditors lack sufficient information regarding their benefits and potential liabilities to cast an intelligent vote." *Paramount Plastics*, 172 B.R. at 334.

*United Operating*, 540 F.3d at 355. The need to notify creditors of their potential liabilities could be read as requiring identification of prospective defendants.

Upon further examination of *Paramount Plastics*, the case does not support an identification requirement.

In *Paramount Plastics*, the postconfirmation plaintiff argued that the following language properly reserved the right to bring preference actions postconfirmation:

---

[7] *Harstad I* does address the issue of identification (and the need to notify prospective defendants) directly. Nevertheless, as will be explained later, it also does not support the idea that prospective defendants must be identified—other than the identification implicit in a specific and unequivocal reservation of the right to bring certain causes of action.

[The Court retains jurisdiction to:]

1. Determine the allowance or disallowance of claims and interest;

2. Determine all matters related to the Reorganization Plan until substantial consummation of the Reorganization Plan . . . .

. . . .

5. For such other matters as may be set forth in the order of confirmation.

*Paramount Plastics*, 172 B.R. at 332. As is clear from the excerpted language, *Paramount Plastics* is yet another example of a court dealing with obviously insufficient retention language. The issue of identification of prospective defendants was not directly raised.

The primary issue addressed in *Paramount Plastics* was whether retention language is necessary at all. *Paramount Plastics*, 172 B.R. at 332 ("The primary issue, one of first impression in this District, is whether the debtor may pursue preference claims postconfirmation, where the plan contains no reservation of rights or retention of jurisdiction to prosecute such actions."). At least one court had previously ruled that retention language was not required due to § 1141(b), which states that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1141(b); *Paramount Plastics*, 172 B.R. at 334 (citing *In re Jennings*, 46 B.R. 167 (Bankr. E.D. Pa. 1985)).

In ruling that specific and unequivocal retention language was necessary for proper claim preservation, *Paramount Plastics* prominently featured the following excerpt:

> Because the confirmation of a Chapter 11 Plan dissolves the bankruptcy estate and the rights and powers created under the Bankruptcy Code, the retention provision of § 1123(b)(3)(B) requires specific and unequivocal language of reservation. Without this language, the avoidance powers of the Trustee stemming from the Bankruptcy Code at §§ 544, 546, 547, 548, 549 and 550 perish and become unenforceable.

*Paramount Plastics* (citing *In re Mako, Inc.*, 120 B.R. 203, 209 (Bankr. E.D. Okla. 1990)).  Two additional cases were cited immediately thereafter as in accord with *Mako*:  *In re Harstad*, 155 B.R. 500 (Bankr. D. Minn. 1993), and *In re Mickey's Enterprises, Inc.*, 165 B.R. 188, 193 (Bankr. W.D. Tex. 1994).  *Paramount Plastics*, 120 B.R. at 209.  The importance of *Paramount Plastics* to the *United Operating* opinion necessitates an examination of those cases cited as support for the ruling in *Paramount Plastics*.

      **1.**     *Mako, Inc.*

The excerpt in *Paramount Plastics* was from *In re Mako, Inc.*, 120 B.R. 203 (Bankr. E.D. Okla. 1990).[8]  In *Mako*, the following language was deemed not sufficiently specific and unequivocal for RMC (purchaser of the debtor's assets via a confirmed Chapter 11 plan) to retain the right to bring avoidance actions:

> [Section 6.01.05] The assumption by RMC of all of the debtor's rights in
> pending litigation constituting contested matters or adversary proceedings
> in this case, and all pending appeals to which debtor or the liquidating
> trustee is or was a party on the effective date (other than the litigation
> described on Exhibit "G" hereto) together with the right to prosecute all
> objections to claims which may exist on the effective date, or any others to
> which RMC may object in accordance with the plan, and may appear as
> the real party in interest in any pending or later instituted contested matter
> or adversary proceeding filed herein.

120 B.R. at 206.  The *Mako* court found this language insufficient to preserve the right for RMC to bring avoidance actions.  120 B.R. at 209.  The *Mako* court specifically rejected the argument that retention of the right to bring objections to claim is the equivalent of retaining the right to bring an avoidance action in an adversary proceeding:

> Although some courts have found creative methods for contorting the
> provisions of Chapter 11 Plans to find a retention of the avoidance powers,
> we concur with the cases that require more particularity in the Plan

---

[8] The Tenth Circuit had ruled on the appeal of *Mako* by the time *Paramount Plastics* was issued, but the Tenth Circuit opinion was not addressed.  *See In re Mako, Inc.*, 985 F.2d 1052 (10th Cir. 1993).

provisions.  Compare *In re Centennial Industries, Inc.*, 12 B.R. 99 (Bankr. S.D.N.Y. 1981) with *In re Neptune Worldwide Moving, Inc.*, 111 B.R. 457, 463 (Bankr. S.D.N.Y. 1990) (The Court in *Centennial* concluded that retention of the right to object to claims post-confirmation was sufficient to find a retention of authority to bring an adversary action seeking recovery of a preferential transfer.  The Court in *Neptune* rejected this position as ignoring the distinction between the Motion practice utilized to object to claims and the required adversarial practice necessary to pursue avoidance actions.)

*Mako*, 120 B.R. at 209-10.[9]  This indicates that the concern in *Mako*, as with *United Operating*, rested with the type of claims reserved—not the need to identify the prospective defendants.  *See Tex. Wyo. Drilling*, 647 F.3d at 552 ("We observe that *In re United Operating* focused exclusively on the retention of *claims*.  It never held that intended defendants must be named in the plan.") (emphasis in original).  The citation to *Mako* in *Paramount Plastics* also does not support the notion that proper claim retention requires identification of prospective defendants.

## 2.      *Harstad I* (Bankruptcy Court Opinion)

The next case cited in *Paramount Plastics* was *Harstad I*.  In fact, the excerpt from *Paramount Plastics* regarding notifying creditors of their potential liabilities (used by the Fifth Circuit in *United Operating*) comes from *Harstad I*.  The full excerpt reads as follows:

> [R]etention of preference actions is of great consequence to creditors. Usually, those entities which are the subject of preference action [sic] are still creditors and have a right to vote on the debtor's plan.  ***Creditors, exercising that right, must have the informed opportunity to reasonably understand what their benefits and what their potential liabilities are upon confirmation of that plan.  However, when the debtor fails to specifically and unequivocally retain preference actions, creditors are effectively stripped of their right to information and are left to vote and accept a plan without realizing that they are potential targets of a post-petition complaint.***
>
> ***Even unsecured creditors who are not potential preference defendants are interested in potential preference recoveries.  The potential amount of preference recoveries and the proposed distribution***

---

[9] This implies that the right to bring claim objections was properly retained.

*of those recoveries enter into the decision of whether or not the creditors want to accept the plan's proposed treatment of unsecured creditors.*

> Especially interesting to unsecured creditors, and to the court for that matter, is the requirement of section 1129(a)(7)(A)(ii) that each creditor accept the plan or receive at least as much as it would in a chapter 7 liquidation.  That is, since preferences could be recovered in a chapter 7 case, creditors need to know if the preferences will be pursued in a chapter 11 case before they vote on the plan and the court needs to know before it decides whether to confirm the plan.  If the retention language is not clear and unequivocal, creditors and the court are misled into believing preferences were not assumed. . . .

*Harstad*, 155 B.R. at 509 (emphasis added).  Of all these opinions, *Harstad I* comes closest to supporting the notion that proper claim preservation requires identification of prospective defendants.

*Harstad I* makes a critical assumption.  It assumes that advising creditors that preference actions are being retained is sufficient to enable them to accurately calculate their potential benefits and liabilities under the plan.  That is, it is only necessary for the plan to state "the debtor retains the right to bring preference actions postconfirmation" for creditors who received preferential transfers to realize they are postconfirmation targets.   It is not necessary for the plan to state, in addition, that "preference actions exist against creditors A, B, D, F, M, and X."

This assumption is important because it impacts the issue of identification.  As seen from the excerpt above, *Harstad I* highlighted the importance of advising creditors that they are potential postconfirmation defendants.  Because of the assumption made, however, identification in the manner proposed by Cardinal Health is not necessary to accomplish this.   Under this assumption, once the creditors are informed which causes of action are being retained they will: (i) be able to calculate their benefits and potential liabilities under the plan; and, (ii) know whether they are a potential postconfirmation defendant.

The only identification *Harstad I* can be read as supporting is that identification which is implicit when the right to bring a certain category of claims (here, preference actions) is specifically and unequivocally retained.

The assumption in *Harstad I* can certainly be disputed.  The further away from (relatively) straightforward preference actions the basis of recovery gets, the more questionable the assumption becomes.  As the need to provide creditors with the information necessary to calculate their benefits and liabilities under a proposed plan is often cited as an important part of § 1123(b)(3), there is a tension here.

Nevertheless, this is the operating assumption of *Harstad I*.  As such, the statement from *Harstad I* used in *United Operating* (via *Paramount Plastics*) does not support the idea that prospective defendants must be identified—except insomuch as identification is implicit by a specific and unequivocal retention of the right to bring certain categories of claims.

### 3.     *Mickey's Enterprises, Inc.*

The court in *Mickey's Enterprises* did not rest its decision on improper retention under § 1123(b)(3), but on res judicata and equitable estoppel grounds.[10]  The relation between proper retention language and certain estoppel-based affirmative defenses will be addressed in a later section.

---

[10] It is unclear why *Paramount Plastics* chose that specific pincite.  The most likely reference is probably the following:  "Under these circumstances, the Defendant was entitled to adequate information of what the Debtor's Plan provided *with regard to it* so it could make an informed decision as to how to react to the Debtor's plan." *Mickey's Enters.*, 165 B.R. at 193 (emphasis in original) (discussing the necessity for plans and plan proponents to disclose "adequate information").

D.      *Ice Cream Liquidation*

The only case cited in *United Operating* thereafter on this issue is *In re Ice Cream Liquidation, Inc.*, 319 B.R. 324 (Bankr. D. Conn. 2005).  *United Operating*, 540 F.3d at 356. Importantly, *Ice Cream Liquidation* is the only case to directly address the issue of identification.

Section 5.2 of the Plan confirmed certain powers and duties on the postconfirmation Debtor, including:

> (a) to liquidate all of its property to cash;
>
> . . .
>
> (c) to prosecute any claims under Sections 544, 547, 548 and 550 [collectively, "Avoidance Actions"] of the [Bankruptcy] Code; [and]
>
> . . .
>
> (f) other powers and duties described in th[e] Plan or conferred upon it by operation of law

*Ice Cream Liquidation*, 319 B.R. at 327.   The *Ice Cream Liquidation* court rejected the defendants' argument that proper claim preservation requires greater specificity as to the entities to be sued postconfirmation:

> The court adopts as the better-reasoned view those cases which hold that a Section 1123(b)(3) reservation need not be as specific as the Defendants argue in order to be enforceable. *See, e.g.*, *The Elk Horn Coal Co., LLC v. Conveyor Manufacturing & Supply, Inc. (In re Pen Holdings, Inc.)*, 316 B.R. 495, 504-05 (Bankr. M.D. Tenn. 2004) **("It is not practicable, especially in larger cases, for the debtor to identify by name in the plan or disclosure statement every entity that may have received a preferential payment . . . . Nothing in [Bankruptcy Code] § 1123(b)(3) suggests such specificity is required.");** *In re Ampace Corp.*, 279 B.R. at 161 ("[A] subsequent action is *not* barred by a prior confirmation hearing under the doctrine of *res judicata* where the disclosure statement and plan contain a *general* reservation of the right to pursue preferential actions post-confirmation." (emphasis in original)).  **This court believes that the foregoing line of cases is more consistent with the realities of chapter 11 practice than a more stringent rule.   In any event, the notice to creditors in this case of the existence of potential preference recoveries was adequate.   *Cf. Pen Holdings*, 316 B.R. at 500-01 ("As the history**

> **of § 1123(b)(3) plainly shows . . . the notice issue in § 1123(b)(3) is not notice to potential defendants, it is notice to creditors generally that there are assets yet to be liquidated that are being preserved for prosecution by the reorganized debtor . . . .").** Accordingly, the court concludes that the reservation of preference causes of action in the Plan was sufficiently specific.

*Ice Cream Liquidation*, 319 B.R. at 337-38 (emphasis added).

As the Fifth Circuit noted in *Texas Wyoming Drilling*, "*In re United Operating*'s citation to *In re Ice Cream Liquidation*'s holding supports the trustee's argument that a plan need not identify the prospective defendants." *Tex. Wyo. Drilling*, 647 F.3d at 552. In other words, the only case cited in *United Operating* directly addressing the issue of identification ruled that proper claim preservation does not require identification of any kind (other than, perhaps, the identification implicit in the specific and unequivocal reservation of the right to bring certain categories of causes of action).

### E.    Categorical Identification Not Required

The facts of this case require the Court to decide whether categorical identification is required. If so, the Plan Agent lacks standing and Cardinal Health's Motion to Dismiss must be granted.[11] If not, then the Plan Agent may proceed with these causes of action.

The Fifth Circuit has not decided the issue of categorical identification. In *Texas Wyoming Drilling*, the Fifth Circuit declined to rule on the question. 647 F.3d at 552 ("[W]e need not decide whether a debtor whose plan fails to identify *any* prospective defendants has standing to pursue post-confirmation claims against subsequently-named defendants.")

---

[11] The Plan Agent attempts to argue that the prospective defendants are categorically identified. Specifically, the Plan Agent points to Article 14.2 of the Disclosure Statement and the phrase "Creditors . . . [who] received a voidable transfer." (ECF No. 20 at 8). The Plan Agent argues that this is akin to the categorical identification in *Texas Wyoming Drilling* ("various prepetition shareholders of the Debtor"). The Court rejects this argument as this sentence adds absolutely no clarification. If a debtor plans to pursue preference actions (and properly retains the right to do so), then obviously the transferees of those transfers are prospective defendants. In other words, the Court sees no difference between this language identified by the Plan Agent and language stating that the debtor retains the right to bring preference actions. If categorical identification is required, this is insufficient.

(emphasis in original).  As pointed out in *MPF Holdings*, the Fifth Circuit addressed the general topic of identification when it ruled in *Texas Wyoming Drilling* that, if identification is required, categorical identification is sufficient.  2012 WL 5503952 at *5.

A closer examination of the cases cited and quoted in *United Operating* reveals that they do not support Cardinal Health (and other postconfirmation defendants) who read *United Operating* as requiring categorical identification.  The only case directly addressing the issue (*Ice Cream Liquidation*) explicitly held that this was not required.[12]  The remaining cases did not directly address the issue, and only isolated phrases (removed from their proper context) indicate support for Cardinal Health's position.

The answer cannot be obvious, however, as the Fifth Circuit did not dismiss out of hand the identification arguments put forth in both *Texas Wyoming Drilling* and *MPF Holdings*.  It is beyond peradventure that identification is strongly preferred by the Fifth Circuit.  *See In re MPF Holdings US LLC*, 2012 WL 5503952 at *7 (noting that the plan terms were "far more specific" than those in *United Operating* as the defendants were identified by name and the bases for recovery were clearly stated); *Tex. Wyo. Drilling*, 647 F.3d at 551 (citing numerous reasons, including categorical identification of prospective defendants, why the plan terms were more specific than *United Operating*).  This does not mean, of course, that it is required.

The problem may lie with the tension noted above.  Having already held that individual identification is not required, that language such as "will be sued" is not required, and that ambiguities do not make retention language invalid per se, categorical identification may be a

---

[12]  Again, in *Texas Wyoming Drilling* the Fifth Circuit highlighted this fact.  647 F.3d at 552 ("*In re United Operating*'s citation to *In re Ice Cream Liquidation*'s[, 329 B.R. 324 (Bankr. D. Conn. 2005)] holding supports the trustee's argument that a plan need not identify the prospective defendants.").

bridge too far.  The less information required, the more the "notice" aspect § 1123(b)(3) is undermined.

There is at least one policy interest working in the opposite direction, at least in cases where (as here) the funds recovered by the postconfirmation actions will be distributed to prepetition creditors (as opposed to management or to equity holders in control of management). In *Reed v. City of Arlington*, the Fifth Circuit held that judicial estoppel should not prevent a bankruptcy trustee from pursuing (for the benefit of estate creditors) a cause of action that the debtor failed to schedule.  650 F.3d 571 (5th Cir. 2011) ("Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application.") (quoting *Bissek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006) (Easterbrook, J.)).

Applying an equitable doctrine such as judicial estoppel is clearly different from the legal question of postconfirmation standing.  However, as noted above, certain requirements of § 1123(b)(3)  come not from the statutory language itself, but from policy considerations due to the significance of the provision in chapter 11 cases.  *See, e.g.*, *Harstad I*, 155 B.R. at 509 ("Turning to the statute, section 1123(b)(3)(B) on its face is devoid of language quantifying or qualifying the language required by a debtor attempting to retain preference actions.  The consequences of retention, however, are significant implying that the language must be specific and unequivocal.").

This situation is analogous to *Reed v. City of Arlington*.  If funds are recovered in this lawsuit, they are to be distributed amongst innocent creditors.  It is a valid policy goal to avoid (if possible) reading into § 1123(b)(3) additional requirements likely to punish innocent creditors

instead of plan proponents (who are in fact the ones responsible for any alleged failure to include sufficient information).

Although it is a close call, the Court finds that the *United Operating* analysis does not require categorical identification of prospective defendants.

### III. Estoppel-Based Affirmative Defenses

#### A. Relationship Between § 1123(b)(3) and the Estoppel Affirmative Defenses

Parties surprised to find themselves postconfirmation defendants often raise several defenses that relate to information (or lack thereof) contained in the plan and disclosure statement. For example, they may argue simultaneously: (i) lack of postconfirmation standing due to improper § 1123(b)(3) retention language; and, (ii) the affirmative defenses of equitable estoppel and judicial estoppel. *See, e.g.*, *Tex. Wyo. Drilling*, 647 F.3d at 549 (raising the defenses of postconfirmation standing, judicial estoppel, and res judicata).[13]

Proper retention language under § 1123(b)(3) includes the "notice" aspect mentioned by the Fifth Circuit in *United Operating* (and the cases cited in support). This is the notice to creditors of the claims being retained, which is necessary to properly calculate expected payout under the plan. Whether the creditor is a potential postconfirmation defendant is one aspect of that information necessary to calculate liabilities and benefits under a plan. Improper retention language, therefore, relates at least in part to insufficient information contained in the plan and disclosure statement.

Equitable estoppel or judicial estoppel may apply if the disclosure statement and plan do not simply lack sufficient information but are affirmatively misleading. Surprised

---

[13] If the argument of a lack of postconfirmation standing due to improper § 1123(b)(3) retention fails, res judicata will fail as well. "Res judicata does not apply where a claim is expressly reserved by the litigant in the earlier bankruptcy proceeding." *Tex. Wyo. Drilling*, 647 at 553 (quoting *Browning v. Levy*, 283 F.3d 761, 774 (6th Cir. 2002)).

postconfirmation defendants may allege that they were actively misled by the disclosure statement and plan to believe that they would not be sued postconfirmation.  *See, e.g.*, *Tex. Wyo. Drilling*, 647 F.3d at 552 (affirmative defense of judicial estoppel rejected as debtor did not take "clearly inconsistent" positions); *Mickey's Enters.*, 165 B.R. at 194 (affirmative defense of equitable estoppel accepted).

It is likely that a postconfirmation defendant who can successfully raise the defense of equitable estoppel will also be able to win on a postconfirmation standing challenge.  This is not necessarily the case, however.  Especially after this Court's ruling that *United Operating* does not require categorical identification, it is possible to envision a scenario where proper retention language exists but the postconfirmation plaintiff is estopped from bringing suit because of a misleading plan or disclosure statement.

### B.  *Mickey's Enterprises*

The language at issue in *Mickey's Enterprises* provides a possible example.[14]   The Disclosure Statement contained the following provision:

> [a]ll causes of action (with the exception of any Causes of Action against
> Glenfed which are released) are preserved and retained for enforcement by
> the Reorganized Debtor whether or not commenced prior to the Effective
> Date.    The Causes of Action retained include, without
> limitation: . . . (ii) all preference claims pursuant to Section 547 of the
> Bankruptcy Code . . .

*Mickey's Enters.*, 165 B.R. at 191 n.1.  This appears to be proper retention language under the *United Operating* analysis for a § 547 preference claim.

However, the Disclosure Statement also contained the following language:

> [a]s an additional source of money to be distributed to general unsecured
> creditors and to supplement the Debtor's cash flow, the Debtor will

---

[14]  As stated above, the case was decided on res judicata and equitable estoppel grounds and the issue of postconfirmation standing was not considered.  *Mickey's Enters.*, 165 B.R. at 192-94.

undertake to research and identify certain causes of action available to the Debtor pursuant to the Debtor's avoidance powers created by the Bankruptcy Code . . .

[t]he Debtor's analysis does not include a valuation of any possible avoidance actions available pursuant to the Bankruptcy Code. *As it does not appear that any liquidating trustee would have any unencumbered funds to use to prosecute avoidance actions, it is doubtful that any such actions could be brought. The uncertainty of liability and collectability of such claims makes any valuation thereof speculative. . . . In any event, these causes of action are not thought to have any significant value for unsecured creditors in a liquidation.*

*Mickey's Enters.*, 165 B.R. at 191 (emphasis added).

The Court found the debtor was equitably estopped from bringing these postconfirmation causes of action. *Mickey's Enters.*, 165 B.R. at 194. The elements of equitable estoppel in the Fifth Circuit are: "(1) a material misrepresentation (or concealment), (2) made with actual or constructive knowledge of the true facts, (3) with intent that the misrepresentation be acted upon by (4) a party without true knowledge or means of knowledge of the true facts, (5) who detrimentally relies or also acts on the misrepresentation." *Neiman-Marcus Group, Inc. v. Dworkin*, 919 F.2d 368 (5th Cir. 1990).

The *Mickey's Enterprises* court found that all elements of equitable estoppel were met. 165 B.R. at 194. Additionally, the court found that "[t]he Debtor effectively concealed the existence of, and its intentions with regard to pursuit of, a significant preference action against its sole supplier of gasoline that it knew it would be pursuing postconfirmation against this Defendant." *Mickey's Enters.*, 165 B.R. at 194. The court further stated: "The clear impression one gets from reading the Disclosure Statement is that the Debtor is downplaying the potential for preferential recoveries either as a significant asset or as a significant source of recovery." *Mickey's Enters.*, 165 B.R. at 193.

If similar language in a plan were ruled upon today, a court might well find that the language constitutes proper § 1123(b)(3) retention but that the postconfirmation plaintiff is nevertheless equitably estopped from bringing a § 547 preference action.

### C.  Preventing Reliance

Reliance is a key element for both equitable estoppel and judicial estoppel.  *See Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 335 (5th Cir. 2004) (defining the second element of judicial estoppel as "the court's acceptance of the previous position"); *Neiman-Marcus Group, Inc. v. Dworkin*, 919 F.2d 368 (5th Cir. 1990) (equitable estoppel requires that the party detrimentally rely or act on the misrepresentation).

A statement indicating to the parties that they should not accept a plan under the assumption that they will not be sued will prevent reliance.  The following is one example of such a provision:  ***"No holder of a claim should accept this plan on the assumption that the holder (or any other person) will not be sued.  The [name of postconfirmation entity] may bring any viable, properly retained cause of action against the holder of a claim or against any other person."***[15]

### IV.   Application

### A.    Retention Language in Disclosure Statement and Plan

Article 10.5 of the Disclosure Statement is entitled "Preservation of Claims and Rights" and reads, in part, as follows:

> The Debtor, the Liquidating Debtor, and the Plan Agent reserve any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, the Record Date and/or any

---

[15] Although not directly raised by Cardinal Health, the Court finds that the following language in the Disclosure Statement is sufficient to avoid estoppel: "Creditors and Interest Holders are advised that if they received a voidable transfer, they may be sued whether or not they vote to accept the Plan."  (ECF No. 298 at 55).

Distribution date, including, without limitation, any and all Causes of Action, Rights of Action and/or claims for relief that the Debtor, the Liquidating Debtor or the Plan Agent has against (i) any insurer and/or insurance policies in which either the Debtor and/or their current or former personnel have an insurable or other interest in or right to make a claim against, any other of the Debtor's insurers; (ii) any recipient of a transfer identified in the Debtor's statements of financial affairs, including any amendments thereto, filed in this Chapter 11 Case, including but not limited to the parties identified on the attached Schedule 2; and (iii) the Non-Released Parties for claims of breach of fiduciary duty, fraudulent transfer, preferential transfer, unauthorized post-petition transfer under 11 U.S.C. § 549, turnover under 11 U.S.C. §§ 542 and 543, subordination, recharacterization of debt to equity, malpractice, constructive trust, disgorgement, counterclaims, claims to determine the extent and validity of liens under 11 U.S.C. § 506 and any other claims that the Estate may have against such Non-Released Parties. . . .

(ECF No. 298 at 39).  This same language is included in Article 11.6 of the confirmed plan.

(ECF No. 299 at 34-35).

The Plan defines the following pertinent terms:

- <u>Cause of Action</u>.  Any Claim or cause of action, legal or equitable, now owned or hereafter acquired by the Debtor, the Debtor in Possession or the Estate whether arising under contract or tort, federal or state law, including but not limited to Avoidance Actions, whether commenced prior or subsequent to the Petition Date.

- <u>Avoidance Action</u>.  Any and all rights, claims and causes of action arising under Sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553 or 724 of the Bankruptcy Code.

- <u>Rights of Action</u>.  Includes (a) any avoidance, recovery, subordination or other action of the Debtor, the Estate or the Liquidating Debtor, (b) any Cause of Action of the Debtor, the Estate or the Liquidating Debtor, (c) any objection or other challenge to a Claim, and (d) any objection or other challenge to an Interest.

(ECF No. 299 at 10, 11, 16).

Article 14 of the Disclosure Statement is entitled "Causes of Action."  Key retention language is found in Article 14.2, which is entitled "Fraudulent Transfers":

Under the Bankruptcy Code and various state laws, the Debtor may recover certain transfers of property, including the grant of a security

interest in property, made while insolvent or which rendered the Debtor insolvent. ***The Liquidating Trustee and the Post-Confirmation Committee reserve the right to bring fraudulent conveyance claims.***

The Debtor has conducted a limited analysis of potential recoveries under Chapter 5 of the Bankruptcy Code and concluded that potential claims may exist.  A list of the known payments are set forth in the Debtor's statements of financial affairs, which are incorporated herein.  In addition, all secured creditors scheduled as "disputed" in the Debtor's Amended Schedule D (see Article 3.1.9 herein) are subject to claims for fraudulent transfer and/or preference on account of their asserted security interests. ***Creditors and Interest Holders are advised that if they received a voidable transfer, they may be sued whether or not they vote to accept the Plan.  All avoidance actions and rights pursuant to §§ 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553, and 724 of the Bankruptcy Code and all causes of action under state, federal or other applicable law shall be retained and may be prosecuted or settled by the Plan Agent/Post-Confirmation Committee in their sole discretion.***  To the extent that material amounts are recovered, it will enhance the returns to the holders of Unsecured Claims.

(ECF No. 298 at 55) (emphasis added).

## B.    Postconfirmation Standing Requirements Met

The Court finds that the retention language satisfies the postconfirmation standing requirements under *United Operating*.

The right to bring postconfirmation fraudulent transfer causes of action is retained in Article 11.6[16] of the Plan, and in both Article 10.5 and Article 14.2[17] of the Disclosure

---

[16] "The Debtor, the Liquidating Debtor, and the Plan Agent reserve any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, the Record Date and/or any Distribution date, including, *without limitation* . . . ." (ECF No. 298 at 39) (emphasis added).  This section goes on to list, among  the rights reserved, the right to bring "Causes of Action," a term defined to include "Avoidance Actions," which is itself defined to include claims under §§ 544 and 548.

[17] "The Liquidating Trustee and the Post-Confirmation Committee reserve the right to bring fraudulent conveyance claims."  (ECF No. 298 at 55). "Creditors and Interest Holders are advised that if they received a voidable transfer, they may be sued whether or not they vote to accept the Plan.  All avoidance actions and rights pursuant to §§ 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553, and 724 of the Bankruptcy Code and all causes of action under state, federal or other applicable law shall be retained and may be prosecuted or settled by the Plan Agent/Post-Confirmation Committee in their sole discretion."  (ECF No. 298 at 55).

Statement.  (ECF No. 298 at 39, 54; No. 299 at 34).  The Plan Agent is given the power to prosecute all retained causes of action on behalf of the Liquidating Debtor.  (ECF No. 299 at 22).

The retention language is specific and unequivocal.  Although the language at first appears generic (e.g., "any and all Causes of Action"), the term Causes of Action is further defined as including Avoidance Actions (which is defined to include § 548 fraudulent conveyance actions and state law fraudulent conveyance actions applicable under § 544(b)).  This manner of cross-referencing terms was specifically approved of in *MPF Holdings*. 2012 WL 5503592 at *1. Additionally, Article 14.2 specifically states (without a cross-reference) that avoidance actions (including those under § 548 and § 544) shall be retained and may be prosecuted by the Plan Agent.  (ECF No. 298 at 55).

The only other issue is identification.  If categorical identification is required, the retention language is insufficient.  As discussed above, the Court finds that *United Operating* does not require categorical identification. The retention language is sufficient.

### C.     Cardinal Health's Arguments

Cardinal Health puts forth several arguments why these claims were not specifically and unequivocally retained.  It should be noted that Cardinal Health did not have the benefit of the Fifth Circuit's *MPF Holdings* case when it submitted its briefing.

#### 1.     Blanket Reservation Language

First, Cardinal Health argues that Article 10.5 of the Disclosure Statement ("Preservation of Claims and Rights") uses generic language (e.g., "claims and rights against any and all third parties"), followed by three categories of potential claims and potential defendants—none of

which encompass the fraudulent conveyance causes of action against Cardinal Health.  (ECF No. 13 at 5-7).[18]

This statement, although true, fails to point out other relevant facts.  Article 10.5 includes the phrase "without limitation," indicating that, although it thereafter enumerates certain categories of retained claims, those enumerated categories do not comprise the entirety of the retained claims.  (ECF No. 298 at 39).  In addition, Article 10.5 states that all "Causes of Action" are being retained, which is defined to include "Avoidance Actions," a term itself defined to include § 548 and § 544 causes of action.  (ECF No. 298 at 39).  The reorganization plan in *In re MPF Holdings* had a similar system of cross-referenced terms, and the Fifth Circuit found that the reservation language was sufficiently specific and unequivocal.  2012 WL 5503952 at *1-2.

Furthermore, Cardinal Health fails to address Article 14.2—where it is expressly stated that fraudulent conveyance claims are retained and may be prosecuted.

### 2.      Retention Language Equivocal

Cardinal Health's next argues the retention language is equivocal because: (i) extraneous references to certain causes of action conflict with the blanket reservation contained in Article 10.5 ("Preservation of Claims and Rights"), thereby creating ambiguity; and, (ii) the Disclosure Statement and Plan do not commit to bringing any causes of action, instead merely stating that such claims "may" be filed.  (ECF No. 13 at 8).

The first aspect of this argument is rejected because Article 10.5 contains more than a blanket reservation, as discussed above.  Additionally, Article 14.2 also contains more than a blanket reservation.

---

[18] The first and third arguments are related but yet separate.  Both argue that the retention language is insufficiently specific, but the first argument focuses on lack of specificity in the basis of recovery/nature of the claim (fraudulent conveyance) while the third argument focuses on lack of specificity as to prospective defendants.

The second aspect of this argument was explicitly rejected in *MPF Holdings*.  2012 WL 5503952 at *5 ("*Texas Wyoming* therefore made clear that [language such as "will be sued"] is not mandated by *United Operating*."); *see also In re Texas Wyoming Drilling, Inc.*  647 F.3d at 549 ("The Debtor *may* also pursue other actions . . . .") ("[R]eorganized Debtor *may* pursue . . . .) (emphasis added).  If *MPF Holdings* is read to at least require a statement that potential claims "may exist", that is present here as well.  (ECF No. 298 at 55) ("The Debtor has conducted a limited analysis of potential recoveries under Chapter 5 of the Bankruptcy Code and concluded that potential claims may exist.").

### 3.      Cardinal Health Not Mentioned

The third argument is that the retention language is insufficient because Cardinal Health is not named as a potential defendant (either individually or as part of a category such as "prepetition shareholders").  (ECF No. 13 at 10).  Similarly, Cardinal Health argues the Plan Agent should not be allowed to sue Cardinal Health because the retention language identified three categories of potential defendants, none of which describe Cardinal Health.  (ECF No. 13 at 10).

The first aspect is simply the argument that categorical identification is required.  This argument is addressed and rejected above.

The second aspect (whether postconfirmation plaintiffs are precluded from bringing actions against an unnamed defendant if some prospective defendants are named) need not be addressed. Although Article 10.5 of the Disclosure Statement ("Preservation of Claims and Rights") and Article 11.6 of the Plan do enumerate certain categories of prospective defendants, the enumerated categories are preceded by the phrase "including, without limitation."  (ECF No. 298 at 39, No. 299 at 34-35).  Additionally, in the same paragraph it is stated that the Plan Agent

is reserving claims and rights "against any and all third parties."  (ECF No. 298 at 39, No. 299 at

34-35).

### 4.        Reservation of Rights Provisions Insufficient

Cardinal Health's fourth argument seeks to prevent the Plan Agent from relying on what

Cardinal Health views as "generic" reservation of rights provisions.  (ECF No. 13 at 11) (citing

Plan Articles 11.5 and 11.6 as examples).  Cardinal Health argues that "[a] reservation of rights

simply acts as a statement of intent not to release claims, and cannot serve as retention language

pursuant to *United Operating*."  (ECF No. 13 at 11).

As described above, these provisions are not "generic" as the generic terms (e.g. "Causes

of Action") are elsewhere defined more specifically.   Additionally, this argument fails to

mention Article 14.2 of the disclosure statement.

### 5.        Objection to Claim/Request for Attorneys' Fees

Cardinal Health's fifth argument relates to the trustee's § 502(d) argument[19] claim

objection and request for attorneys' fees.  Cardinal Health argues that these requests for relief

hinge on viable fraudulent conveyance causes of action.  (ECF No. 13 at 11).  Therefore, if the

fraudulent conveyance causes of action are dismissed for lack of standing, these must be

dismissed as well.  (ECF No. 13 at 11).

The fraudulent conveyance causes of action are not being dismissed, and therefore the

requests for attorneys' fees and § 502(d) disallowance will likewise not be dismissed.

---

[19] Section 502(d) provides for mandatory disallowance of claims by the Court in certain circumstances.  It is not a
claim objection in the usual sense.  This Memorandum Opinion does not address the retention of the right to bring
claim objections.

**Conclusion**

The Court will issue an Order in accordance with this Memorandum Opinion.

**SIGNED December 21, 2012.**

_____

**Marvin Isgur**
**UNITED STATES BANKRUPTCY JUDGE**